Good morning, Your Honors. I'm Jill Telfer on behalf of Appellant Ed Stanek. Plaintiff Ed Stanek, a 21-year employee, brought claims for violation of the First Amendment, disability discrimination and harassment, age discrimination and harassment, retaliation, and a common law claim for violation of public policy based on adverse actions that were taken against him that affected the terms and conditions of his employment. The District Court granted summary judgment after excluding a wealth of evidence. I had trouble seeing how he could win even if he got all the evidence in. I mean, basically, he's a night watchman who was caught sleeping on the job. That is disputed, though, Your Honor. He was not caught sleeping on the job. What occurred was after Ed Stanek engaged in protected activity, complaining about violation of overtime, he, Defendant Rankin, conducted surveillance against him at 3 a.m. in the morning. He drove there at 3 a.m. in the morning. He's the night watchman. And she looks at the guardhouse. No Staniek. Well, he was there. Well, maybe he was there, but his head wasn't sticking out. What about the trucks that drove through? Trucks were driving through and weren't even stopped. Your Honor, there is no evidence that trucks were driving through other than the statement of Defendant Rankin, who was a police officer. That's correct, Your Honor. But the Court is not to weigh the evidence. Well, then it's the other way. Yes, the You had evidence that there was no log of any other trucks going through, don't you? Correct. And also the declaration of Ed Stanek. That's the other way. If the guy's asleep, he's not going to be writing in his log a truck went through. That's correct. But Ed Stanek was an impeccable employee of 21 years, no evidence that he ever fell asleep on the job. And in this instance, he said that he was on the job and he did not fall asleep. There's no evidence. So what occurred is there's disputed evidence. And for a motion for summary judgment, the Why wasn't his head he wasn't asleep. Well, the question is, did Defendant Rankin actually go and try to get into the gatehouse? She claims that she tried to see if it was locked, but she never called him. She never did anything. If she was actually in fear that there was a problem there or that he was even asleep, why didn't she make a phone call? Did you in the nature of your discovery ask the examining officer, the supervising officer to identify the truckers that came through and then go to those truckers, find out if there was any traffic through the gate at that hour and that day by any of their drivers? I mean, you've got a dispute. You want to create a dispute if you're trying to get through summary judgment. This evidence of what happened during that night's watch is undisputed. Now, you're either going to attack her credibility or you're going to show affirmatively that she's testifying that a truck went through that didn't go through. With all due respect. And you can urge me to believe that, but I don't see anything in the record to support that. There is in the record. It's the declaration of Ed Stanek, who stated that no trucks went through and there's no objective evidence that any trucks went through. What you're asking me to do is go out and find evidence of something that never occurred. And that was impossible. As trial counsel, how are you going to dispute it? Didn't you also have evidence that she didn't go up to look into the cubicle or whatever they were, the lookout, supposed to be to determine whether he was or was not there? Yes. Yes, Your Honor. There is evidence that calls into question the credibility of Defendant Rankin. Specifically, you can see in the gatehouse. There is evidence that you can see in the gatehouse. She claims that she went up there and looked in and could not see through the gatehouse because you couldn't see in it. But that is directly contradicted by Captain Rankin. Approximately two years before, on the same night watch, she looked to see if an officer, Smith, was in the gatehouse and she found him sleeping on that incident. She went in and he was disciplined. But he was only disciplined after engaging in that conduct on three occasions. So there's evidence to dispute Captain Rankin. One is, does she have a motive? There's a wealth of evidence showing from 95, 96, that she engaged in trying to get rid of Ed Stanek. That from 79 to 95, they had a wonderful relationship. She even promoted him. Once he became disabled and once he was older, and specifically He wasn't sleeping on a job. It's probably right that she should try to get rid of him. He wasn't sleeping on the job, Your Honor. And there's no evidence to say otherwise. Tell me in the There is evidence that he was sleeping. The question is whether there is a genuine issue of fact. Now, tell me where to look in the excerpts to find Stanek's testimony under oath that is deposition or wherever else it is where he says, I was wide awake. Specifically, he does not say he was wide awake. And may I step back first? What I got out of it was he said, well, I have this prostate problem, so I have to get up and urinate all the time at night, so I can't get a good night's sleep, so I sleep a lot. So I should get an accommodation for my disability. I didn't get I couldn't find a reference to where he says I was wide awake. And you're telling me there isn't one. What I'm specifically saying is there no evidence, number one, that he was sleeping. No one saw him sleeping ever. There's no evidence of that. Number two is that in his declaration, he states I was on the watch. No trucks went through. I saw no trucks. If you can cite me to the deposition, it would be nice because usually I can get more context. But if it's only in the declaration, that's evidence. That'll help. It is in Mr. Staniak's declaration. Tell me the excerpts, please. The excerpts are too voluminous for me to read. It begins on ER 496. And I'll give you the exact page and line. I just need to skim. Oh, I'm sorry. It is in volume two of the four. Would you read it to us? Yes. I'm starting on paragraph eight, which is on ER 497. It says I was only required to make log entries on the gate traffic log if the vehicles were commercial vehicles or non-employed vehicles. There were none that entered the port after 12 a.m. on the graveyard shift of January 2001. He could testify truthfully to that effect if he was asleep, because he would not  be able to testify to that effect if he was asleep. Where does he say he's awake? Nowhere does he say he's awake, and nowhere does anyone ever say he was asleep. Well, for the first part of your statement, that's what I wanted to know. For the second part, I think an inference could be drawn by a jury from the night watchman seeing the empty booth, or apparently empty, no head sticking up, that he was asleep or not on watch. However, on the motion for summary judgment, as well as at this stage, the evidence is supposed to be looked at in the light most favorable to the appellant or the non-moving party for the motion for summary judgment. How do you explain the fact that he went to his own psychotherapist, I guess it was, who found that he's unfit for duty, can't do the job, and he hasn't been able to do the job due to, what, sleep apnea and this prostatic, benign prostatic disorder? That evidence actually was in the end of March of 2001, after all of these events occurred. Then his doctor said that the stress exacerbated his condition. But prior to that time, he could work. In fact, the defendants, when they claimed that they felt he was unfit for duty, still allowed him to work for a month before they sent him to the fitness for duty. And what we must do is look at the totality of the evidence here. What we're doing is looking at one isolated incident. And, of course, there is, I believe, a triable issue. The jury could infer by looking at all of the evidence that Captain Rankin was not credible. Because of her prior conduct, there is a triable issue if you look at the evidence that happened on January the 9th when she went out to conduct surveillance. There's more evidence to show that there's pretext. She's a police officer. She doesn't log the identity of any of the trucks. Now, what police officer, especially a supervising police officer ---- I don't see why it has a bearing on summary judgment. It would not ---- Let's say for purposes of discussion that we think she's a liar. We think she's a dishonest person motivated by hatred of Staniak. So what? We don't have the authority to throw out her statement. You don't have the authority to throw out her statement just as a court should not ---- the district court should not have thrown out the prior pattern in practice or the admissions made by Rankin. Let's talk about the prior pattern. As I understand it, these two people came to work about the same time way back when, and she got promoted. And then they got into some interpersonal problems in 95, 96. She found his conduct to be intolerable, and she made a lot of statements about older people. You were kind of ---- somebody was kind enough to not say what she really said, but shocked a bit up the record there, I guess. In any event, but then after that hassle, things quieted down, and there wasn't anything, was there, for what, after 97 until the Christmas of 2000? There were no adverse acts. However, there was hostility between them. But even the Coles alter case that had come out. Sometimes defendants lie in wait. And may I just go back to the 95, 96. It wasn't interpersonal issues between them. Specifically in 95 was when Plaintiff Ed Stanek Appellant was diagnosed with his condition. Also at that time, he engaged in protected activity, and that was he participated in a work fraud investigation that potentially concerned Captain Rankin, Defendant Rankin. Also that occurred in 96 time frame was that he had ---- We'll grant you that there were statements made and things said then. And I'll also grant you that the trial judge ruled as hearsay things that were clearly admissions of a party opponent, but still it could exclude them on remoteness under Rule 401, because I'll also grant you that you don't have to lock into a statute of limitations time for things to be relevant. So, but having said all that, what is there in any of that testimony that is other than a valid exclusion on the basis of remoteness? And that's a judge's discretion to exclude. Well, in regards to the remoteness, it is not actionable, but it is still admissible. And the relevance is a very broad issue of relevance. The statute of limitations clearly run in all that stuff. There is one ---- I'm sorry. Where's the relevant book when you have almost three years of no adverse action? It's animus, Your Honor. Ed Stannick did not engage in any protected activity from 97 to 2000. At the end of 2000 is when he engaged in the protected activity, number one, objecting to failure to follow overtime or labor laws. And two, in February 14th, 2001, he complained of disability discrimination and age discrimination. And there's one other site, and I know I was supposed to present it earlier. I will present it to the court and give three copies after this oral argument, but it's the RAD case, RAD v. Fairbanks North Star Borough. It's a Ninth Circuit case, and it was decided in March of 2003. It's at 323 F. 3rd, 1185. And in that case, the court specifically said that remote evidence or evidence that is not actionable may still come in to show animus, and it's relevant and admissible insofar as it bears on the issue of discrimination. Animus is so hard to prove because you have to read someone's mind. That's why most cases aren't circumstantial evidence. In this case, the plaintiff had to show circumstantial evidence, and there is a wealth in regards to animus as well as pretext. The pattern in practice is evident. Each time that Ed Stanek engaged in a protected activity, there was a retaliation that was taken against him. Every case that deals with prior acts and remoteness, isn't there also an element of continuousness? There is an element of continuousness as well. The court has since ruled that the U.S. Supreme Court has since ruled that discrimination cannot come in under continuing acts, but the evidence can still come in in regards to show animus. In this case, clearly, plaintiff has shown evidence to raise a triable issue of fact, and at this juncture, the court is not to weigh the evidence. It is to look at the evidence that is undisputed and to look at the evidence. I would think, counsel, that what you can establish through Brad and through your argument is that had the judge admitted the evidence, that would not be an abuse of discretion. But it doesn't seem to go far enough to me to show that when he did, in fact, exclude the evidence, that that was an abuse of discretion. It just means it can go either way. But even if it went your way, I still don't get why the animus enables him to get to a jury in this case. So she hated him. So what? And I will address that. Under the First Amendment, I have shown two protected activities, the December 2000 and the February 14, 2001. Remind me what they are. December 2000 was the overtime. He objected to her failure to pay overtime and told her that she was violating California law. The other protected activity was February 14, 2001, when he stated that he felt as though she was discriminating against him based on his disability and age. After those actions, he was subjected to adverse actions. In regards to the overtime, thereafter he was suspended for 40 hours. About six days after he objected to the failure to pay overtime, she did her surveillance. Also, there was a two-written warning. But wait a minute. Are we talking First Amendment in terms of interpersonal business transactions and relationships? We're not talking about him out to the press complaining about the whole port activity or its management or its police chief or this is just internal employment. He does go to management. He goes to the governmental agency where he works, management, and complains to them. He wants overtime pay. So he goes and says, I'm entitled to overtime pay. They have an interpersonal dispute about overtime pay. It's not an issue projected outside the port and made public, is it? It is not objected out. No. It was not publicized outside the port. He has the right to go to the newspaper and advertise this or what? But the First Amendment claim is that he has a right to object in regards to issues that are a matter of public concern. No. He asked to his personal concern about overtime. But it was not only his personal concern. It also concerned the other employees at the port. Is he the union representative that's negotiating wages and working hours and terms and resolves disputes between the union and the management? He has done that in the past. But in this specific instance, he brought up his situation but then complained and said this is a violation of labor laws. That's pretty low on the pecking order for your case. I'm sorry, Your Honor. Is that issue pretty low on the pecking order? It is. The retaliation is better under the 1102.5. It's hard for me to see his retaliation. The way it sounded to me is she's thinking overtime. You're not even entitled to undertime. You're sleeping on a job. You're telling me that you can't stay awake because you've got these medical problems. Actually, Your Honor, the issue regarding alleged sleeping on the job happened after the overtime issue. He objected to the overtime, and thereafter she conducted surveillance. Exactly. Has no objective evidence whatsoever to show he was sleeping on the job. But he told her himself, I can't stay awake. He stated that I have problems staying awake. But he had an impeccable record, no discipline, and was very important. For sleeping. He says I have problems staying awake. That's true, he did. My boss would listen to that and think, oh, you know, I bet this guy has problems staying awake. Well, what must be pointed out is the disparate treatment of Ed Stanek. He was the first employee there that was ever suspended for an alleged even first violation of dereliction of duties. All the other officers there had two and three occasions prior to their suspension. So why is he singled out in this instance? Again, that raises a triable issue. And you stated there is a causal connection actually between adverse actions and his protected activity. At the time of his suspension, didn't the union intervene on his behalf and there was a resolution of the dispute that was not favorable to him? No, there was no resolution of the dispute. He asked some of his union representatives to go to these meetings where he complained of discrimination. And at that meeting, the union representative and his representative claimed that he was handling himself fine, that there was no need for a fitness for duty. There was a discussion there as to what to do. At that time. The fitness for duty was ordered as the result of that meeting, wasn't it? The fitness for duty, the meeting was on February the 14th, 2001. Four days after that meeting, Defendant Rankin asked for a fitness for duty of Ed Stanek. And there was a claim that he had a mental disorder at the time that was scheduled by appointment? That's what. And he took a powder and didn't pursue it? What occurred was that a plaintiff learned that Defendant Rankin was asking for a fitness for duty. No officer on the court had ever had to go through a fitness for duty before. And when he found out about it, he also found out that Dr. Wolf was a doctor that Defendant Rankin suggested who had a reputation of finding officers unfit. She made an appointment for him to go see the doctor. She did. And it's very interesting, though. If they thought he was unfit, why did they keep him on the job for a month? They could have put him on paid leave. The doctor that he chose found precisely what the other doctor would have found. Not specifically, though. What happened was there were adverse actions that. To be an employee, to carry on this job. Well, what happened was the psychologist had him off work because of the additional harassment that took place. From February the 14th, 2001, he received another written warning. They refused to accommodate his sick leave, and they had sent him to this fitness for duty. So he was getting disciplined. And so there were additional acts that occurred. And you have to put it in context. He's a 21-year employee, an impeccable record, a very, very perfectionist gentleman. He worked hard. Yes, he did have these disabilities. But, again, there is evidence to show animus on behalf of Defendant Rankin. The Court should not have excluded what it did. There's pattern and practice evidence. And in looking at the evidence in favor of the non-moving party, appellant respectfully requests that the Court reverse the decision and remand it back to the District Court. Thank you very much for your time. Good morning, Your Honors. Anna Mary Gannon for the Defendants, Yolo-Sacramento Port Authority, and Captain Janie Rankins. Your Honors, this is a plaintiff who admits that throughout the period of his employment, up until the time of his suspension, the Port accommodated his disabilities. That's clear in the record. It accommodated his prostate problem. It accommodated his sleep apnea problem. And it accommodated a back problem that has somehow or another managed to get its way in here. What happened was, on Christmas Day, he worked more than his regular shift, and his supervising officer asked him why. He told her, and he was paid. That's the overtime dispute. As Judge Beezer pointed out, purely an internal housekeeping or an administrative matter. Then on the morning of January 10th, Captain Rankins, after receiving reports that the Port was not being properly guarded during the evening hours and early morning hours, drove out to the Port and found the guardhouse locked from the inside, the lights inside off, and no evidence of Mr. Stanek. And Mr. Stanek, although technically she did not say he was sleeping on the job, her reasonable inference was that he was sleeping on the job, and he was suspended for dereliction of duty. At no time has Mr. Stanek ever said that he was not sleeping on the job. The testimony that you ask counsel to direct you to, if you continue to Mr. Stanek's declaration on page 502, at the very bottom of that page, paragraph 33 of his declaration, he says, I was never accused of sleeping, either verbally or in the suspension-written documents. That's true. He was accused of dereliction of duty. I was never asked by anyone if I was sleeping. We will accept that as true for purposes of this argument. I was never asked what I was doing between 3.30 a.m. and 6 a.m. However, I did state several times that I was present in the gatehouse and that from 3.35 a.m. I was sitting at the stool at the front counter. So he agrees he's there, but he doesn't say I had the lights on, as I am required to do. He doesn't say that I acknowledged Captain Rankins when she comes up and checks the door lock. He doesn't say that he logged in traffic. Well, does that make a factual dispute, if he's sitting there? He must have been seen. It was still dereliction of duty, Your Honor. He didn't respond to Captain Rankins. All he's saying is I'm sitting there, you know, with my head on the desk asleep. The fact finder says, Captain Rankin, we don't believe her. And you've got his statement, I was sitting there in the guardhouse. He has never stated, though, that he agrees he didn't have the lights on because he didn't believe that was appropriate in violation of the policy. He doesn't say that he logged in traffic. She testified that she observed people in the port, and he never ---- She didn't log in traffic, did she not? She did. And checked the logs and couldn't find it. There was no log on the traffic, and she saw people, and she identified the people that she saw inside the port. And he said there was nobody came through the gate, and I didn't have to log anybody, and I was on duty. Right. Dispute of fact? It's a disputed fact, but not a material disputed fact. There's no evidence whatsoever indicating that even if she was wrong in her determination, that it's evidence of ---- It's certainly the trigger that leads ultimately to physical and mental examination that really results in termination. Your Honor, it's a beginning event. What happens then is that he files a grievance, and at the February 14th hearing from which Captain Rankin was excluded, port management, Mr. Thompson and Mr. Maggetto, were concerned about his emotional state. They ordered the fitness for duty exam and told Captain Rankin to identify a doctor to conduct it. At that point, by his own testimony, Officer Stanek so lost it that he has not been able to return to work since that time and is permanently unable to work as a police officer because, in his own doctor's words, he's subject to lapses of judgment that could make the difference between life and death. Was he retirement qualified when he was terminated? I'm sorry. Was he retirement qualified? I believe he could have taken an early disability retirement, Your Honor, but I don't think that's in the record. After the lower court decision, Mr. Stanek did submit a resignation. Once he was terminated, those rights of retirement were taken away. Was that an incident of the termination, that he didn't make an election, so therefore he never did get any retirement benefits? Oh, no, Your Honor. He has his vested retirement benefits, no question about that, and he's receiving them. Counsel, I'm just curious. When I read that affidavit, to me it looks really artful. Here's his chance to say, I wasn't asleep, and he doesn't say it. Yes, Your Honor. Instead, he just shoots a lot of ink out. And I'm thinking, boy, that sure is red meat for a deposition. Is there a deposition where all this is explored? Yes, Your Honor. And could you give me the excerpt's page number and tell me what he said about being asleep? I was thinking the inference was the opposite. If he's sitting on the stool like he swears, but he cannot be seen from outside the guardhouse, that suggests that his head is under the level of the windows, unusual place for it to be unless he's asleep. And he doesn't say he wasn't asleep. So I thought it was really clever drafting. Your Honor, I'm having difficulty turning to it, and I apologize because I should be able to do that. Are you looking for a negative? Don't spend a lot of your time on it. I thought you'd probably have it like the pages in a book that are always open to. Well, I believe, since I took his deposition, I know he was asked whether or not he had the lights on, and he said he did not have the interior lights on. He indicated he did not acknowledge Captain Rankin's. He indicated the door was locked from the inside. You have to admit, getting to these prior animus of this particular person, who might have a motive to say that he wasn't there when he may have been there, if that's a factual dispute, if these, in the truth, in the record, that she said his conduct was intolerable back in 95, 96 era, and that she called him bad names along with other guys his age, isn't that? And hasn't she been on this guy's back almost continuously from 95, 96? She talked to other people how you could get rid of this guy legally, and she said, I'll find a way to do it. Isn't that all in the record? Your Honor, it's in the record that she said she got in trouble with management when she hired a 60-year-old police officer. Well, that's one thing. But as far as the personal, what she personally said, not what management said. And there's also evidence of disparate treatment of other workers compared to this worker. Your Honor, there is no evidence of any other employee who was disciplined  That's what I'm saying. This is the most severe discipline that was imposed on any employee under any circumstances, and there were other people that had problems staying awake on the watch. Your Honor, the only evidence in the record is that one other officer was observed because he had the lights on as he should sleeping. He gave an explanation. That's the problem. Are we to resolve that, or is a district court judge to resolve that on paper record, or is this the kind of thing that ought to go to a jury on age discrimination? No, Your Honor. It doesn't create a material issue of that. There is nothing that links those This old buzzard is getting worn out, and she's got it in for him. I can read that from the record, right? Your Honor, not because he's old and not because he has disabilities. She accommodated all of his disabilities. He had accused her of misconduct. She had accused him of misconduct. There's no question there was personal They had bad feelings for years. Absolutely, Your Honor. They wanted to get rid of him from the record. Fair inference. I thought your answer would be, okay, that all happened, but then suddenly things got sanitized. They smoothed out. And that's true, Your Honor. For five years there was Christmas, a little blip in Christmas, and then this big, big thing. For five years disability that he said he had trouble keeping awake. And she goes to check out. Can he keep awake? And he can't. Whether he's asleep or whether he's abandoned his post, I would assume equally bad, aren't they? Your Honor, you're absolutely correct. All of those comments are correct. I think it is a fair inference that Captain Rankins and Officer Stanek did not get along, that she thought he questioned his judgment. As his counsel pointed out, and I think as Judge Kleinfeld noted, he artfully crafted his declaration. He knows the rules and he enforces them, which is his absolute legal right. But there's no problem from 1995 until on Christmas Day she says, why did you work more than your regularly scheduled shift? Why did you stay on for an extra half day? But the upshot is we have a person who can't do the job. At the end of, by his own testimony. And he's retired. And that because of the very fact that he was suspended and was asked to go to a fitness for duty test, that alone was sufficient to trigger permanent impairment to do the job, which certainly suggests that this is not a man who is, although he functions very much as a night guardman and what we might typically think of as a security guard, he is actually a sworn police officer who carries a firearm. Carries a gun? Yes. I thought he fired, he gave up his. That was as firearms instructor, Your Honor. As an instructor. He gave up his job as an instructor because he didn't believe the port was doing adequate instruction based on his interpretation of the law. Due to his disability, he should no longer do it. He also said at the bottom that even if the port brought things up to snuff, as he believed they should have been, he would not be able to be the firearms instructor because of his disabilities. But he remained as a police officer carrying a gun. Does the Court have any other questions? Thank you, Your Honors. Thank you, Counsel. Stanek v. Sacramento Yolo. Did she reserve time? No, you're over time. Once it's read, it's counting how much time you're over rather than how much is reserved. Thank you, Counsel. Stanek is submitted.
judges: Goodwin, Kleinfeld,jones